01

02

03

04

05

06

07

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

08  LORI ANN ROQUE-OLEA,                )     CASE NO. C07-0882-TSZ
                                        )
09          Plaintiff,                  )
                                        )
10      v.                              )     REPORT AND RECOMMENDATION
                                        )     RE: SOCIAL SECURITY
11  MICHAEL J. ASTRUE,                  )     DISABILITY APPEAL
    Commissioner of Social Security,    )
12                                      )
            Defendant.                  )
13  _____)

14          Plaintiff Lori Ann Roque-Olea proceeds through counsel in her appeal of a final decision

15  of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner

16  denied plaintiff's applications for Disability Insurance Benefits (DI) and Supplemental Security

17  Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ).   Having

18  considered the ALJ's decision, the administrative record (AR), and all memoranda of record, it

19  is recommended that the decision be REMANDED for further administrative proceedings

20  consistent with this Report and Recommendation.

21  / / /

22  / / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01

**FACTS AND PROCEDURAL HISTORY**

02     Plaintiff was born on XXXX, 1962.[1]  She has a high school education.  Plaintiff previously

03 worked as a care giver, customer service representative, production worker, and retail worker.

04     Plaintiff filed an application for DI benefits on September 19, 2005 and an application for

05 SSI benefits on September 29, 2005.  Her applications were denied at the initial level and on

06 reconsideration, and she timely requested a hearing, which was held on December 12, 2006. (AR

07 419-52.)  The ALJ issued a decision on February 26, 2007 finding plaintiff not disabled. (AR 14-

08 24.)

09     Plaintiff timely appealed to the Appeals Council.  After considering additional evidence,

10 the Appeals Council denied the request for review, making the ALJ's decision the final decision

11 of the Commissioner. (AR 6-9.) Plaintiff timely appealed to this Court.

12

**JURISDICTION**

13     The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

14

**DISCUSSION**

15     The Commissioner follows a five-step sequential evaluation process for determining

16 whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must

17 be determined whether the claimant is gainfully employed.  The ALJ found plaintiff had not

18 engaged in substantial gainful activity since her alleged onset date.  At step two, it must be

19 determined whether a claimant suffers from a severe impairment.  The ALJ found plaintiff's sleep

20

---

21

22     [1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -2

01   apnea, moderate obesity, depression, and anxiety disorder severe. Step three asks whether a

02   claimant's impairments meet or equal a listed impairment.  The ALJ found that plaintiff's

03   impairments did not meet or equal the criteria for any listed impairment.  If a claimant's

04   impairments do not meet or equal a listing, the Commissioner must assess residual functional

05   capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to

06   perform past relevant work. The ALJ found that plaintiff retained the RFC to lift 20 pounds

07   occasionally and 10 pounds frequently, to perform simple, repetitive tasks where she would not

08   have contact with the public and to have limited contact with coworkers where she would not have

09   to interact with them.  She could not work around hazardous machinery. The ALJ found that

10   plaintiff's past relevant work as a hand packager was not precluded by this RFC.  If a claimant

11   demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner

12   to demonstrate at step five that the claimant retains the capacity to make an adjustment to work

13   that exists in significant levels in the national economy.  The ALJ made an alternative step five

14   finding that, considering plaintiff's age, education, and work experience, she could perform the

15   job of small parts assembler, which exists in significant numbers in the national and regional

16   economy.  The ALJ, therefore, found plaintiff to be not disabled.

17         This Court's review of the ALJ's decision is limited to whether the decision is in

18   accordance with the law and the findings supported by substantial evidence in the record as a

19   whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means more

20   than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

21   mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

22   (9th Cir. 1989).  If there is more than one rational interpretation, one of which supports the ALJ's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -3

01  decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.
02  2002).

03      Plaintiff argues that the ALJ erred by failing to give adequate reasons for rejecting the
04  opinions of a treating physician and an examining physician, for failing to give sufficient
05  consideration to her functioning during a closed period of disability, and by failing to include all
06  of her exertional and non-exertional limitations in the hypothetical posed to the vocational expert.
07  The Commissioner contends that the ALJ's decision was free of error and supported by substantial
08  evidence, and should be affirmed.  For the reasons described below, the undersigned concludes
09  that the matter should be remanded for further administrative proceedings.

10                              Physicians' Opinions

11      In general, more weight should be given to the opinion of a treating physician than to a
12  non-treating physician, and more weight to the opinion of an examining physician than to a non-
13  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not contradicted
14  by another physician, a treating or examining physician's opinion may be rejected only for "'clear
15  and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).
16  Where contradicted, a treating or examining physician's opinion may not be rejected without
17  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."
18  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

19      "Where the Commissioner fails to provide adequate reasons for rejecting the opinion of
20  a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'" *Lester*,
21  81 F.3d at 834 (finding that, if doctors' opinions and plaintiff's testimony were credited as true,
22  plaintiff's condition met a listing) (quoting   *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -4

01  1989)). Crediting an opinion as a matter of law is appropriate when, taking that opinion as true,

02  the evidence supports a finding of disability. *See, e.g., Schneider v. Commissioner of Social Sec.*

03  *Admin.,* 223 F.3d 968, 976 (9th Cir. 2000) ("When the lay evidence that the ALJ rejected is given

04  the effect required by the federal regulations, it becomes clear that the severity of [plaintiff's]

05  functional limitations is sufficient to meet or equal [a listing.]");   *Smolen v. Chater*, 80 F.3d

06  1273,1292 (9th Cir. 1996) (ALJ's reasoning for rejecting subjective symptom testimony,

07  physicians' opinions, and lay testimony legally insufficient; finding record fully developed and

08  disability finding clearly required).

09      However, courts retain flexibility in applying this "'crediting as true' theory." *Connett v.*

10  *Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there

11  were insufficient findings as to whether plaintiff's testimony should be credited as true). As stated

12  by one district court: "In some cases, automatic reversal would bestow a benefits windfall upon

13  an undeserving, able claimant." *Barbato v. Commissioner of Soc. Sec. Admin.* , 923 F. Supp.

14  1273, 1278 (C.D. Cal. 1996) (remanding for further proceedings where the ALJ made a good faith

15  error, in that some of his stated reasons for rejecting a physician's opinion were legally

16  insufficient).

17      Plaintiff argues that the ALJ failed to provide legally adequate reasons for rejecting the

18  opinions of examining psychologist Dr. Lind and treating psychologist Dr. Saxvik.[2]

19  _____

20      [2] In a footnote, plaintiff also assigns error to the ALJ's failure to consider her Obsessive-
    Compulsive disorder at step 2 of the sequential analysis and then, in her reply brief, criticizes the

21  Commissioner for failing to address this contention. Plaintiff's counsel is advised that, in the
    future, each disputed issue should be set forth separately in the opening brief, together with a clear
    and concise statement of plaintiff's contentions, with citations to the administrative record and

22  relevant legal authority.  Plaintiff's counsel is also reminded that a lengthy statement of facts is

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01          Dr. Lind, a licensed clinical psychologist, conducted a psychological evaluation of plaintiff

02    on August 12, 2005, including a mental status exam and administration of the Wechsler Adult

03    Intelligence Scale (WAIS-III) and Wechsler Memory Scale (WMS-III) tests.  (AR 235-38.) Dr.

04    Lind noted that plaintiff "appeared to [be] putting forth her best effort, and therefore the tests are

05    considered to be a valid measure of her abilities at this time." (AR 237.)  Dr. Lind found plaintiff's

06    verbal, performance and full-scale abilities to reflect a lower intelligence level than would have

07    been expected based on conversations with her, noting that plaintiff "was extremely hesitant

08    throughout the testing, giving up easily and seemingly fearful of answering a question the wrong

09    way." (AR 238.)

10          The administrative record also includes a "Confidential Psychological Evaluation/

11    Assessment" completed by treating psychologist Sarah K. Saxvik, Ph.D. on November 9, 2005.

12    (AR 249-51.) In that assessment, Dr. Saxvik sets forth presenting symptoms including "poor

13    memory, compulsions, agoraphobia, fatigue, anxiety, insomnia, panic attacks, low self-esteem,

14    unable to concentrate, intrusive thoughts, hypervigilance", and clinical findings including severe

15    verbal expression of anxiety or fear, moderate expression of anger, severe social withdrawal,

16    moderate motor agitation, mild motor retardation, mild paranoid behavior, marked thought

17    disorder, mild hyperactivity, moderate physical complaints, and marked global illness based on the

18    intensity and pervasiveness of all symptoms and impairment of functioning. (AR 249.) Dr. Saxvik

19    endorsed functional limitations in both cognitive and social areas, including severe limitations in

20    the ability to understand, remember and follow complex instructions and in the ability to respond

21

22    unnecessary and, in fact, discouraged.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

01 appropriately to and tolerate the pressure and expectations of a normal work setting, marked

02 limitations in the ability to understand, remember and follow simple instructions, to learn new

03 tasks, to exercise judgment and make decisions, to perform routine tasks, and to interact

04 appropriately in public contacts, and moderate limitations in the ability to relate appropriately to

05 co-workers and supervisors.  (AR 250.) Referring to their "good therapeutic relationship", Dr.

06 Saxvik commented on plaintiff's difficulty in complying with treatment "because of the severity

07 of her anxiety and agoraphobia".  (AR 251.)  No other records, chart notes, or reports from Dr.

08 Saxvik appear in the record.

09      A "Mental Residual Functional Capacity Assessment" was completed by Timothy Gregg,

10 Ph.D., a State Agency medical consultant, on December 8, 2005.  The consultant endorsed no

11 functional limitations greater than "moderate", finding plaintiff's credibility diminished

12
13
14
15

by allegations that her memory is so poor she is unable to drive a car without getting
lost, however, she drove to her 8/05 exam and was on time.  She also alleged that she
was stressed in her last job because she had to work next to a Hispanic man (she
alleged a history of abuse by Hispanic men), but one of her best friends is a Hispanic
male.  Finally Dr. Walker Lind noted that her IQ and Memory scores were an
underestimate due to claimant giving up easily.

16 (AR 268.)  The consultant concluded that plaintiff could persist at simple, repetitive tasks for two

17 hours, could relate appropriately to a supervisor and "a few co-workers" in a non-public setting,

18 could drive independently to familiar locations, and be aware of normal hazards and take

19 appropriate precautions.  The consultant opined that Dr. Lind's disability determination was

20 "undermined by the credibility issues noted above" and Dr. Saxvik's opinion "not supported by

21 objective measures". (AR 266-69.)

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01        In addressing the opinions of these providers, the ALJ found as follows:

02        I do not give significant weight to the opinion of Dr. Saxvik, who is apparently a
           treating psychologist.  There have been no treatment notes demonstrating this treating
03         relationship, and no counseling notes to document the limitations reported by Dr.
           Saxvik which are extreme and inconsistent with the claimant's actual level of
04         functioning.  I am unable [to] rely on the level of disability suggested by Dr. Saxvik
           for these reasons.  I also do not credit Dr. Lind's conclusions since Dr. Lind's own
05         testing suggested that the claimant was not trying very hard during testing and the
           claimant was not completely honest with Dr. Lind concerning her functioning.  I give
06         greater weight to the findings of the State Agency physicians because they had all the
           evidence available to them for their review and were able to detect the inconsistencies
07         that Dr. Lind and Dr. Saxvik were unaware of.  While they never personally evaluated
           the claimant or treated her, they are the only medical sources who have reviewed the
08         record as a whole.

09    (AR 22.)

10        Plaintiff identifies several problems with the ALJ's consideration of Dr. Lind's opinions.

11    Dr. Lind's observation that "Ms. Olea was extremely hesitant throughout the testing, giving up

12    easily and seemingly fearful of answering a question the wrong way" was followed by Dr. Lind's

13    conclusion that:  "At that point during the testing she was tearful and anxious, and may simply

14    have not been capable of thinking because of her emotional distress." (AR 238.)  Plaintiff argues

15    that Dr. Lind did not conclude she was not trying very hard during testing, and that the ALJ

16    incorrectly stated that Dr. Lind concluded that "because of the claimant's propensity to quit early

17    during testing, [her IQ] scores were an underestimate of clamant's functioning." (AR 17.)  To the

18    contrary, plaintiff points out, Dr. Lind noted that she "appeared to [be] putting forth her best

19    effort, and therefore the tests are considered to be a valid measure of her abilities at this time."

20    (AR 237.)

21        Plaintiff further asserts that the Commissioner fails to show that Dr. Lind's opinions were

22    substantially based on incredible statements, rather than the doctor's own objective testing and her

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -8

01  interpretation of the clinical signs of plaintiff's mental disorders. Plaintiff argues that the perceived

02  inconsistencies that the ALJ cited in finding her testimony not entirely credible do not hold up

03  under scrutiny. She points out that the ALJ mis-cited the exhibit number of a medical record

04  relied on to establish inconsistency in plaintiff's recitation of a history of childhood abuse, noting

05  that the citation provided refers to an audiometric evaluation that does not reference any such

06  history. (AR 22, *citing* AR 219-20, referenced in the Decision as Exhibit 1F.) Plaintiff asserts the

07  lack of material discrepancy between Dr. Lind's report that she graduated from high school and

08  her achievement of a GED, as well as her avoidance of driving because of her anxiety and panic

09  attacks and her preference of driving with the assistance of a friend to compensate for her memory

10  problems. Plaintiff also contends her friendship with a male, gay, Hispanic friend does not

11  contradict her fear of having to work next to a Hispanic male she did not know because of a

12  previous sexual assault.

13      Plaintiff further contends that the ALJ erred in failing to give significant weight to the

14  opinions of treating psychologist Dr. Saxvik due to the lack of treatment notes demonstrating the

15  treating relationship or documenting the assessed limitations. Plaintiff argues that the ALJ failed

16  to uphold her duty to fully and fairly develop the record, noting that in cases where the claimant

17  suffers from a mental impairment, the ALJ's duty is heightened. *Delorme v. Sullivan*, 924 F.2d

18  841, 32 (9th Cir. 1991).

19      The Commissioner contends that the ALJ properly resolved conflicting medical evidence

20  and notes that an ALJ may reject any doctor's opinion that is premised on a claimant's properly

21  discredited subjective complaints. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216-17 (9th Cir. 2005).

22  The Commissioner asserts that Dr. Lind's own testing suggested plaintiff was not performing to

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -9

01  her capabilities, and that the evidence shows plaintiff was not being completely honest with Dr.

02  Lind regarding her functioning.  The Commissioner argues that the ALJ appropriately gave greater

03  weight to the opinion of the State Agency consultant because he was the only medical source to

04  review the record as a whole and was, therefore, uniquely poised to identify inconsistencies the

05  other doctors could not.  The Commissioner asserts that the ALJ properly rejected Dr. Saxvik's

06  opinion as  inadequately supported by the record and notes that the duty to further develop the

07  record only arises if it is ambiguous or inadequate to allow for proper evaluation of the evidence.

08      An ALJ has an obligation to recontact a treating physician or psychologist when the

09  evidence received is inadequate for a determination of disability.  20 C.F.R. §§ 404.1512(e),

10  416.912(e) ("When the evidence we receive from your treating physician or psychologist or other

11  medical source is inadequate for us to determine whether you are disabled, we will need additional

12  information to reach a determination or a decision.")  *See also Widmark v. Barnhart* , 454 F.3d

13  1063, 1068 (9th Cir. 2006) ("[T]he ALJ should not be 'a mere umpire' during disability

14  proceedings.  Rather, the ALJ has 'a special duty to fully and fairly develop the record and to

15  assure that the claimant's interests are considered.'") (quoted sources omitted).  The "ALJ's duty

16  to develop the record further is triggered only when there is ambiguous evidence or when the

17  record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276

18  F.3d 453, 459-60 (9th Cir. 2001).  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

19  2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for

20  proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'")

21  (quoted source omitted).

22      In this case, the only evidence in the record from Dr. Saxvik, who apparently had a

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -10

01   therapeutic relationship with plaintiff of some length, was a three-page form completed by the

02   doctor at the request of an unspecified agency. (AR 249-51.) For the ALJ to conclude that "Dr.

03   Saxvik's opinion was not supported by objective measures" (AR 18), without reviewing Dr.

04   Saxvik's actual treatment records or requesting a clarifying report from Dr. Saxvik, was not

05   adequate. The ALJ gave greater weight to the state agency consultant because he was "able to

06   detect the inconsistencies that Dr. Lind and Dr. Saxvik were unaware of". (AR 22.) Without

07   reviewing Dr. Saxvik's full treatment file, this conclusion is not warranted. Upon remand, the ALJ

08   should obtain Dr. Saxvik's full treatment records and, if these are not sufficient to ascertain the

09   basis for Dr. Saxvik's opinions regarding plaintiff's functional capacity, re-contact Dr. Saxvik for

10   clarification.

11       With regard to Dr. Lind, the ALJ's construction of Dr. Lind's opinion as concluding that

12   plaintiff "was not trying very hard during testing" (AR 22) is not supported by substantial

13   evidence. To the contrary, Dr. Lind opined that plaintiff "appeared to [be] putting forth her best

14   effort". (AR 237.) Moreover, while the ALJ relied on the fact that the State Agency consultant[3]

15   had more evidence available for review than Dr. Lind or Dr. Saxvik, there is no indication the

16   State Agency consultant reviewed <u>any</u> records other than the reports from Dr. Lind and Dr.

17   Saxvik. (AR 266-68.) On remand, the ALJ should, if necessary, obtain clarification from Dr. Lind

18   as to the basis of her conclusion regarding the validity of the test results and plaintiff's tendency

19   to give up easily during the testing. The ALJ should reconsider Dr. Lind's opinions based on a

20   proper construction of Dr. Lind's conclusions regarding plaintiff's efforts during testing, and

21

22        [3] Although the ALJ refers to "State Agency physicians", the report appears to have been prepared by a single psychologist, not a team of doctors. (AR 268.)

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -11

01  should either re-evaluate the reliability of plaintiff's history as reported to Dr. Lind without regard

02  to inconsistencies in reports of childhood abuse, or provide an accurate reference to the record to

03  demonstrate an inconsistency.[4]

04      As noted, plaintiff also disputes the conclusion drawn by the ALJ that her reports to her

05  doctors about her high school degree, her driving ability, and her fear of Hispanic co-workers were

06  discrepant.   However, the ALJ is "entitled to draw inferences 'logically flowing from the

07  evidence'." *Macri v. Chater*, 93 F.3d 540, 544 (9th Cir. 1996) (citing *Sample v. Schweiker*, 694

08  F.2d 639, 642 (9th Cir. 1982)).  "When there is evidence sufficient to support either outcome, we

09  must affirm the decision  actually made." *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985)

10  (citing *Rhinehart v. Finch*  , 438 F.2d 920, 921 (9th Cir. 1971)).   Nevertheless, the ALJ's

11  consideration of additional medical evidence from Dr. Lind and Dr. Saxvik may require a

12  reconsideration of the credibility of plaintiff's reports about her level of functioning upon remand.

13               <u>Consideration of a Closed Period of Disability</u>

14      Plaintiff next argues that the record shows that, prior to treatment with medication, her

15  sleep apnea, excessive daytime sleepiness, and Attention Deficit Disorder (ADD) were sufficiently

16  severe during the twelve-month period of July 2005 through July 2006 so as to support an award

17  of disability benefits for a closed period. Plaintiff contends that, in posing a hypothetical to the

18  vocational expert, the ALJ did not describe plaintiff's true limitations prior to treatment with

19  Adderall and, therefore, the conclusion that she was not disabled during the closed period is not

20  _____

21      [4] Even taking Dr. Lind and Dr. Saxvik's opinions as true, the record does not necessarily support a finding of disability.  Accordingly, the opinions of these doctors should not be credited

22  as true.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01   supported by substantial evidence.  Defendant asserts that the hypothetical took these conditions

02   into account by limiting plaintiff to light work, restricting her from working around hazardous

03   machinery or heights, and by including moderate limitations in concentration, persistence and pace.

04   Defendant also points to the ALJ's restriction limiting plaintiff to simple tasks where she would

05   have no public contact, and only limited interactions with co-workers.  *Bayliss*, 427 F.3d at 1217

06   (finding an ALJ's functional capacity finding proper because it "took into account those limitations

07   for which there was record support that did not depend on [the claimant's] subjective complaints"

08   that lacked credibility.)  Defendant argues that plaintiff has not shown that the conditions specified

09   caused any functional limitations in addition to those adopted by the ALJ.  In response, plaintiff

10   contends that the ALJ's hypothetical and resultant RFC finding did not incorporate her need to

11   take additional or longer than normal breaks, which, if taken into account, would have precluded

12   her from performing her past relevant work.

13         While plaintiff does not demonstrate error in the hypothetical posed to the vocational

14   expert as it related to her functional capacity at the time of the hearing in December 2006, she

15   correctly notes that the ALJ acknowledged the improvement in memory, energy, and focus she

16   experienced after Dr. Makay prescribed Adderall in July 2006, and adopted restrictions based on

17   plaintiff's improved functioning as a result of that treatment.  (AR 19 ("Dr. Mackay opined at this

18   appointment that memory lapses and episodes have predominantly cleared with the use of Adderal

19   [sic]."); AR 21, ("She has a tendency to forget things and has to write things down to remember

20   them, but she has reported that Adderal [sic] has helped this.  These activities support a finding

21   that she has moderate limitations in concentration, persistence or pace.")) On remand, the ALJ

22   should re-evaluate plaintiff's functional capacity prior to being prescribed Adderall in July 2006,

01 and consider the possibility of an award for a closed period of disability.

02                                    Conclusion

03          For the reasons set forth above, this matter should be REVERSED and REMANDED for

04 further administrative proceedings.

05          DATED this 12th day of March, 2008.

06

07                                        Mary Alice Theiler
                                          United States Magistrate Judge

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14